UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:13-CV-76-GCM

| | |
|---|---|
| KIMBERLY DAGENHART,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | <u>ORDER</u> |

**THIS MATTER** comes now before the Court upon Plaintiff Kimberly Dagenhart's ("Plaintiff's") Motion for Judgment on the Pleadings (Doc. No. 8), filed on October 8, 2013, and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 11), filed on December 9, 2013. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's ("ALJ's") decision is **AFFIRMED**.

I. ADMINISTRATIVE HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits and supplemental security income on June 16, 2009, alleging a disability onset date of November 15, 2000. (Tr. at 15). Plaintiff's claim was initially denied on November 20, 2010, and again upon reconsideration on March 3, 2010. (*Id.*). Plaintiff requested a hearing before an ALJ on

1

April 14, 2010, and the hearing was held before the Honorable Helen O. Evans on August 10, 2011. (*Id.*) On December 19, 2011, the ALJ issued a decision denying Plaintiff benefits. (Tr. at 15–25). The Appeals Council denied Plaintiff's Request for Review by Action on March 18, 2013, thus the ALJ's decision became the Commissioner's final decision. (Tr. at 1–4).

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes, between November 15, 2008, and the date of the decision.[1] (Tr. at 15). On December 19, 2011, the ALJ found that Plaintiff was not "disabled" during the relevant period. (Tr. at 25).

The Social Security Administration has established a five-step sequential evaluation process for determining if a claimant is disabled:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i–v).

In this case, the ALJ determined that Plaintiff was not disabled under the fifth step in the

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

above evaluation process. (Tr. at 24). First, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity after her alleged disability onset date. (Tr. at 17). At the second step, the ALJ found that Plaintiff suffered from six severe, but non-disabling impairments: (1) systemic lupus erythematosus; (2) lumbar spine degenerative disc disease with radiculopathy; (3) lower extremity degenerative joint disease; (4) dysthymia; (5) generalized anxiety; and (6) a depressive disorder. (Tr. at 17). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18). At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work (Tr. at 24) and retained the capacity to "perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)."[2] (Tr. at 19). At the fifth step, considering Plaintiff's age, work experience, and RFC, the ALJ found that there are other jobs that Plaintiff can perform which exist in significant numbers in the national economy. (Tr. at 24). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between November 15, 2008 and the date of the decision. (Tr. at 25).

Plaintiff timely filed this action on August 6, 2013, and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and

---

[2] The ALJ further determined that Plaintiff "is able to lift 20 pounds occasionally and 10 pounds more [frequently]/sit/stand/walk 6 out of 8 hours; is limited to occasionally climbing of stairs/ropes/ladders, bending, stooping, kneeling, crouching and crawling due to knee problems; would be limited to frequent but not continuous fingering and handling with bilateral hands and arms; should avoid extreme heat/cold, workplace hazards (machines) and heights; would be limited to performing simple jobs/routine with no production or quota base environment and only simple work related decisions; could relate appropriately to coworkers and supervisors but not work closely with general public and would be limited to frequent contact with the general public." (Tr. at 19–20).

3

whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

This Court does not review a final decision of the Commissioner *de novo*. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Fourth Circuit has defined substantial evidence as "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

### III.  DISCUSSION[3]

On appeal, Plaintiff argues the ALJ did not consider the intermittent nature of Plaintiff's lupus when assessing her ability to work, and therefore erred in determining Plaintiff had the RFC to perform less than a full range of light work. (Pl. Mem. at 10). Plaintiff alleges that the ALJ "did not consider the periods of time when Ms. Dagenhart's symptoms are at their worst, but only those times when she was at her best." (Pl. Mem. at 11). Specifically, Plaintiff argues

---

[3] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

the ALJ erred in her consideration of: (1) the effectiveness of medication on Plaintiff's symptoms; (2) an evaluation by Plaintiff's employer; and (3) Plaintiff's subjective complaints regarding the limiting effects of her symptoms.

1. **The intermittent nature of Plaintiff's symptoms**

While Plaintiff claims the ALJ did not consider the "waxing and waning of her symptoms," (Pl. Mem. at 11) the ALJ performed a proper RFC assessment and considered Plaintiff's symptoms during her intermittent lupus flares. A claimant's RFC represents the extent of her possible work activity despite her impairment. 20 C.F.R. § 404.1545(a). In assessing a claimant's RFC, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). An RFC assessment requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." *Fleming v. Barnhart*, 284 F.Supp.2d 256, 271 (D. Md. 2003); SSR 96–8p, 1996 WL 374184, at *6.

"Medical impairments causing temporary periods of incapacitation for periods over 12 months qualify as disabling when they preclude performance of substantial gainful activity on a reasonably regular basis." *McDilda v. Barnhart*, No. 6:04CV00036, 2005 WL 831253, at *3 (W.D. Va. April 8, 2005) (citing *Totten v. Califano*, 624 F.2d 10, 11–12 (4th Cir.1980)). When a claimant's impairments present intermittent symptoms, the question is whether the sporadic incapacity prevents her from performing any substantial gainful activity within the meaning of the Social Security Act. *Totten*, 624 F.2d 10 at 12. "The ALJ must consider this question and make specific findings on whether [the plaintiff's] intermittent incapacity constitutes an inability to perform any substantial gainful activity." *Id.*

In evaluating the effect of Plaintiff's intermittent lupus symptoms on her RFC, the ALJ considered the medical opinions of Plaintiff's treating, examining, and disability determination services ("DDS") physicians, medical records documenting Plaintiff's treatment, and Plaintiff's subjective testimony. The ALJ explained that during treatment for lupus from 2001–2011 at Carolina Family Medicine/Family Medical and Urgent Care, longitudinal records of Plaintiff's recent physical examinations consistently demonstrated normal cardiovascular, respiratory, neurological, and musculoskeletal functions. (Tr. at 21.). Further, the ALJ explained that physical examinations performed while Plaintiff was experiencing lupus symptoms of arthralgias, rashes, hair loss, back pain, and fatigue nonetheless reported that Plaintiff was physically stable and able to function. (Tr. at 21–22).

The ALJ gave great weight to the opinion of Dr. Ellis, who consultatively examined Plaintiff on August 8, 2009. (Tr. at 22). Dr. Ellis diagnosed Plaintiff with lupus, but opined that Plaintiff was able to stand, walk, sit, lift, carry, and perform postural and manipulative functions with no limitations. (*Id.*). The ALJ gave some weight to the opinions of DDS physicians Dr. Thompson and Dr. Levin. (Tr. at 23). Likewise, both physicians diagnosed Plaintiff with lupus, but determined that her condition imposed no limitations on her ability to stand, walk, sit, lift, carry, or perform manipulative and postural functions. (Tr. at 325, 360). Both found that Plaintiff was able to perform medium work. (*Id.*). Additionally, the ALJ noted that none of Plaintiff's treating physicians reported that Plaintiff is "totally/permanently disabled and/or unable to work." (Tr. at 23). Moreover, although medical opinions of record indicate that Plaintiff is capable of performing medium work (Tr. at 283, 319–26, 353–60), the ALJ further limited Plaintiff's RFC by finding that she is capable of performing less than a full range of light work.[4]

---

[4] "The undersigned assigns ample weight to Dr. Ellis' opinions but gives the claimant the benefit of the doubt and finds that the claimant is further limited to light work . . . The undersigned accords some weight to the DDS

(Tr. at 22, 23). Accordingly, and for the additional reasons set forth below, the ALJ's specific findings relating to the intermittent nature of Plaintiff's condition were supported by substantial evidence, therefore the ALJ properly considered Plaintiff's lupus in the RFC assessment.

## 2. Medication

In assessing Plaintiff's RFC, the ALJ also considered medical evidence that Plaintiff's lupus symptoms improved with treatment. (Tr. at 21–22). Plaintiff argues the ALJ erred in her analysis of the effect of medication on Plaintiff's lupus symptoms: "[T]he ALJ claimed that Ms. Dagenhart's symptoms were controlled on medication because her arthralgias resolved with Prednisone in August of 2009. He [sic] neglected to mention that a few months later, her hair was falling out, she had a recurrence of the rash on her face with ulcers in her nose and increased arthralgias." (Pl. Mem. at 10). However, Plaintiff mischaracterizes the medical records she alleges the ALJ failed to mention. During this visit, Dr. McClory noted that Plaintiff complained of a mild facial rash, fever blisters, and a side effect of increased hair loss due to HCQ, a new lupus medication. (Tr. at 426–27). Therefore, Dr. McClory instructed Plaintiff to discontinue the HCQ. (*Id.*) During a follow-up appointment two months later, Plaintiff reported that her hair loss had stabilized, but that her lupus symptoms of arthralgias, nasal ulcers, and facial rashes had worsened. (Tr. at 429). Upon restarting the HCQ, records indicate that her ulcers and rashes were resolved and her arthralgias once again decreased. (Tr. at 492–03). Therefore, the ALJ's findings that Plaintiff's "arthralgias/rashes resolved with treatment modalities" (Tr. at 22) and that "medical reports reflected that the claimant's lupus flare-ups responded well to medication" (Tr. at 21) are entirely accurate. Accordingly, in making a disability decision, the ALJ properly considered evidence that Plaintiff's symptoms responded well to medication. *Gross v. Heckler*,

---

opinions but finds that the claimant is further limited to light work due to back pain and the effects of lupus." (Tr. at 22, 23).

7

785 F.2d 1163, 1165–66 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") (citing *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir.1965)); 20 C.F.R. § 404.1530); *Clark v. Astrue*, No. 5:11CV00139, 2012 WL 5879146, at *9 (W.D. Va. November 20, 2012) (finding claimant's lupus caused only mild limitations when symptoms, including photosensitivity, arthritis, seizures, anemia and leukopenia, and immunologic abnormality, were intermittent and controlled by medications). Finally, the ALJ's analysis of Plaintiff's responses to treatment demonstrates that the ALJ considered the intermittent nature of Plaintiff's symptoms in assessing Plaintiff's RFC.

3. **Work evaluation**

Plaintiff's next argues that the ALJ "fails to mention the work performance evaluation in the record . . . [which noted that Plaintiff's] job performance was affected by her severe pain." (Pl. Mem. at 10–11). In the evaluation, Plaintiff's employer Dr. Judy Bumbarger, a veterinarian, opined that Plaintiff "was unlikely to be able to sustain full or part-time employment due to increased physical limitations due to pain." (Tr. at 23). However, the ALJ's decision does mention the evaluation and explain why it was given less weight. (Tr. at 23). The ALJ correctly explained that because Plaintiff's employer is a veterinarian and not a physician, her medical opinion is not entitled to controlling weight. (Tr. at 23). A veterinarian is not an "acceptable medical source" under the Social Security Regulations. *See* 20 C.F.R. § 404.1513(d), § 416.913. Even if Dr. Bumbarger were an acceptable medical source, "medical opinions are not dispositive." *Hawkins v. Apfel*, 172 F.3d 44, at *2 (4th Cir. 1999) (table) (citing 20 C.F.R. § 404.1527(e)(1)) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ also noted that according to the evaluation and Plaintiff's testimony, Plaintiff has been able to perform part time work at

the veterinary hospital caring for dogs and cats. (Tr. at 23–4). Therefore, the ALJ's decision to accord little weight to Dr. Bumbarger's opinion was supported by substantial evidence.

### 4. Daily activities

Plaintiff also argues that despite her complaints of experiencing limiting symptoms during lupus flares, the ALJ "tried to cite [Plaintiff's] daily activities against her, arguing that they evidence an ability to work." (Pl. Mem. at 11). Specifically, Plaintiff argues that the ALJ "mischaracterizes the record" by neglecting to mention Plaintiff's statement in her Function Report (Tr. at 155–57) that pain sometimes prevents her from cleaning and doing chores. (Pl. Mem. at 11). However, in determining Plaintiff's RFC, the ALJ properly assessed Plaintiff's subjective allegations of pain.

"A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence." *Hancock v. Colvin*, No. 6:12–cv–3526 DCN, 2014 WL 1775556, at *10 (D.S.C. May 1, 2014) (citing 20 C.F.R. § 404.1529(c)(4)). In *Craig v. Chater*, 76 F.3d 585, 594–95 (4th Cir. 1996), the Fourth Circuit outlined a two-step process for determining whether a claimant is disabled by pain or other symptoms. The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by claimant." *Craig*, 76 F.3d at 594; 20 C.F.R § 404.1529(b); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). With respect to this step, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying step one of the credibility determination. (Tr. at 21).

The second step requires the ALJ to evaluate the alleged symptoms' intensity and

persistence along with the extent to which those symptoms limit the plaintiff's ability to engage in work. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529(c); SSR 96-7p. This requires an ALJ to consider: (1) a plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) a plaintiff's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. *Craig*, 76 F.3d at 595; 20 C.F.R. § 416.929(c); SSR 96-7p. Such "other" relevant evidence includes: (1) a plaintiff's activities of daily living; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or symptoms; (5) treatment (other than medication received); and (6) any other measures used to relieve alleged pain and other symptoms. *Craig,* 76 F.3d at 595. The ALJ is not required to discuss each enumerated factor; rather the decision must contain "specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Courts must give great deference to the ALJ's credibility determinations, unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Perrin v. Colvin*, No. 3:12cv741–HEH, 2013 WL 5603227, at *4 (E.D. Va. October 11, 2013) (citing *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Plaintiff alleged lupus symptoms of joint discomfort, swelling, regurgitation, constant fatigue, pain-induced sleep difficulty, ankle pain, bronchitis, and immune system compromise/suppression. (Tr. at 20–21). With respect to the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. at 21). The Court finds that the record contains substantial evidence in support of the ALJ's credibility determination.

In reaching her conclusion, the ALJ considered both objective and subjective evidence in assessing the credibility of Plaintiff's complaints of pain. The ALJ properly considered Plaintiff's activities of daily living and determined that they were inconsistent with her alleged limitations caused by pain. The ALJ considered Plaintiff's statements at her disability hearing, in her Function Report, and to her doctors that she is able to walk ten blocks or more, drive, shop, prepare simple meals, care for her son, spend time with others, read frequently, work part-time for a veterinarian, and lift/carry twenty pounds occasionally and ten pounds more frequently. (Tr. at 20–21). *See, e.g.*, *Valley v. Astrue*, No. 3:11–CV–260–HEH, 2012 WL 3257861, at *15 (E.D. Va. June 22, 2012) (finding that a plaintiff's ability to perform simple household chores, drive, and take care of her grandchildren, when combined with positive response to medication and ability to ambulate, were sufficient to discount her claim of disability), report and recommendation adopted, No. 3:11CV260–HEH, 2012 WL 3257876 (E.D. Va. Aug. 8, 2012). The ALJ also relied on objective medical evidence that Plaintiff's lupus symptoms responded well to treatment and her physical examinations produced normal results. *See Whiting v. Colvin*, No. 3:13cv393 DJN, 2014 WL 2434591, at *9 (E.D. Va. May 29, 2014) (finding the claimant's statements concerning the intensity, persistence and limiting effects of her condition not credible because Plaintiff's lupus symptoms flared intermittently rather than constantly, and the records demonstrated improvement).

Finally, as discussed above, the ALJ accommodated Plaintiff's subjective statements of limitation by finding her able to perform less than a full range of light work, even though the

record indicated that she was capable of performing at least medium work. (Tr. at 22, 23). Plaintiff has not adduced any evidence that she experiences greater limitations than those assessed by the ALJ. The medical opinion evidence indicated Plaintiff was able to function physically even with her impairments, probative test results did not support a finding of disability, and none of Plaintiff's physicians reported that she is unable to work. *See* 20 C.F.R. § 404.1512(c), § 416.912(c); *see also, e.g.*, *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); *Plummer v. Astrue*, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Mag. J. Mem. & Rec.) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing *Stormo*), adopted, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Accordingly, the Court finds that the ALJ did not err in her consideration of Plaintiff's consistently reported daily activities when determining that Plaintiff retained the capacity to perform less than a full range of light work.

## IV. CONCLUSION

The ALJ's decision that Plaintiff retained the RFC to perform less than a full range of light work is supported by substantial evidence. As such, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 8), is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. No. 11), is **GRANTED**, and the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to **CLOSE THE CASE**.

**SO ORDERED**.

Signed: September 18, 2014

Graham C. Mullen
United States District Judge